The Honorable E. Ray Stalnaker State Representative 11714 Arch Street Pike Little Rock, Arkansas 72206-4620
Dear Representative Stalnaker:
This is in response to your request for an opinion on whether a "Regional Industrial Development Corporation" can "acquire or charter an Arkansas Commercial Bank." You note that your question arises pursuant to A.C.A. § 15-4-1214(a)(1)(A), (a)(1)(B), (a)(1)(C), and (b)(9), provisions of the "County and Regional Industrial Development Corporation Act." You also inquire, if the answer to this question is "yes," whether the bank's headquarters can be relocated to another region assuming that all other banking regulations are met.
It is my opinion that the answer to your first question is "no," and that an answer to your second question is therefore unnecessary.
As an initial matter, I should note that your question is whether a regional industrial development corporation can "acquire" or "charter" an Arkansas commercial bank. The first word implies some type of purchase of an existing Arkansas bank. The second word ("charter") implies, in my opinion, the incorporation of an Arkansas commercial bank. In my opinion, a "regional industrial development corporation" cannot "charter" or "incorporate" an Arkansas bank, because the Arkansas banking laws require the incorporation to be effectuated by "natural persons." See A.C.A. §23-48-301 (Supp. 1997). The remainder of this opinion, therefore, will address whether such a corporation can "acquire" an Arkansas commercial bank.
The particular statutory sections you cite outline the purposes and powers of a county or regional industrial development corporation. These provisions set out the purposes of the corporations as being:
 (a)(1)(A) To promote, stimulate, develop, and advance the business prosperity and economic welfare of the county or region wherein it is located and its citizens;
 (B) To encourage and assist through loans, investments, or other business transactions in the location of new business and industry in that county or region, and to assist the growth and expansion of existing business and industry; and so
 (C) To stimulate and assist in the expansion of all kinds of business activity which will tend to promote the business development and maintain the economic stability of the county or region, provide maximum opportunities for employment, encourage thrift, and improve the standard of living of the citizens of that county or region. . . .
A.C.A. § 15-4-1214(a)(1)(A), (B), and (C). (Repl. 1994).
Subsection (b)(9), to which you refer, gives such corporations the power:
 To purchase, hold, sell, assign, transfer, mortgage, pledge, or otherwise dispose of the shares of the capital stock of any other corporation or corporations of this or any other state or government, subject to such restrictions and limitations, if any, as may be imposed by the laws of this or any other state in which the corporation may do business; and, while owner of such stock, to exercise all the rights, powers, and privileges of ownership, including the right to vote thereon.
A.C.A. § 15-4-1214(b)(9).
Other provisions of the subchapter give the corporations the power "to do and perform any and all acts and things, and to have and exercise any and all powers as may be necessary, convenient, or appropriate to effectuate the purpose for which the corporation is organized." A.C.A. §15-4-1214(b)(17). Another provision states that the subchapter is to be construed liberally, and that the "enumeration of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods, or things." A.C.A. § 15-4-1203.
The provisions cited above give regional development corporations expansive powers. While these provisions, viewed alone, might encompass the power to acquire or purchase stock in an Arkansas bank, other provisions of the subchapter indicate a contrary intention.
For example, § 15-4-1217(2) and (3) authorize financial institutions to become "members" of the corporation, to make loans to the corporation, and in some instances, to purchase stock in the corporations. While this provision contemplates banks purchasing stock or memberships in regional industrial development corporations, the opposite proposition (a regional industrial development corporation buying stock in a bank) does not appear to be contemplated.
More importantly, section 15-4-1225 provides that:
 (a) A corporation organized under the provisions of this subchapter shall not lend money when credit is readily available on comparable terms elsewhere. Before granting a loan, the directors of the corporation shall endeavor so far as is reasonably possible to ascertain that reasonable opportunity to grant the loan has been given to the financial institutions of the state.
 (b) No corporation organized under the provisions of this subchapter shall receive money on deposit.
These provisions indicate that the legislature authorized the creation of such corporations to fill a need that was not being met by existing financial institutions. The acquisition of an Arkansas bank, which albeit, would be an entity distinct from the corporation, might be seen as the corporation doing indirectly what it is prohibited from doing directly under the provisions above.
Finally, the acquisition of a bank by a regional industrial development corporation would automatically classify the corporation as a "bank holding company" under relevant banking laws. See generally, A.C.A. §23-48-401 to -406 (Supp. 1997). I cannot conclude that the broad general powers given to regional industrial development corporations were intended to authorize such entities to become "bank holding companies" under the banking laws of this state.
For the foregoing reasons, it is my opinion that the answer to your first question is "no." An answer to your second question is therefore unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh